*State of Maryland v. Anthony George Ablonczy*, No. 28, September Term, 2020.  Opinion by Hotten, J.


**CRIMINAL PROCEDURE – *VOIR DIRE* – OBJECTIONS – WAIVER.**  Accepting the jury as empaneled without qualification at the conclusion of jury selection does not waive a prior objection to a trial court's denial of a request to propound a proposed *voir dire* question.

Circuit Court for Washington County
Case No. C-21-CR-18-000119
Argued: January 4, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 28

September Term, 2020

_____

STATE OF MARYLAND

v.

ANTHONY GEORGE ABLONCZY

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.
Barbera, C. J., McDonald and Watts, JJ.,
concur.

_____

Filed: June 23, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Following a physical altercation and robbery, Respondent, Anthony Ablonczy, was arrested and charged with armed robbery, robbery, first and second degree assault, and theft of less than one thousand dollars. Prior to the commencement of a jury trial in the Circuit Court for Washington County, defense counsel for Respondent submitted several *voir dire* questions to be posed to the venire, including a proposed question which addressed the presumption of innocence, burden of proof beyond a reasonable doubt, and the right to remain silent. The trial court declined to pose the question, defense counsel objected, the objection was overruled, and *voir dire* resumed.

At the conclusion of jury selection, the trial court asked whether either party objected to the jury as empaneled and defense counsel responded "no." On appeal, Respondent argued that, in light of this Court's decision in *Kazadi v. State*, 467 Md. 1, 223 A.3d 554 (2020), the trial court committed reversible error in failing to ask the proposed question. The Court of Special Appeals reversed, prompting an appeal by the State to this Court. We granted *certiorari* to determine the following question presented:

> Should accepting a jury as ultimately empaneled waive any prior objection to the trial court's refusal to propound [*voir dire*] questions?

For the reasons expressed below, we answer in the negative and shall affirm the judgment of the Court of Special Appeals.

### FACTUAL AND PROCEDURAL BACKGROUND

#### Underlying Factual Background

Respondent approached an individual sitting in his car on the evening of September 28, 2015, pointed a pellet gun at him and demanded money. Respondent grabbed the

individual's wallet, cellphone, and keys, and then struck him in the face with the back of the gun, injuring the left side of his face and upper lip.[1] DNA found on a cigarette butt inside the victim's vehicle was later attributed to Respondent. Respondent was arrested and charged with armed robbery, robbery, first and second degree assault, and theft of less than one thousand dollars in the Circuit Court for Washington County.

**Circuit Court Proceeding**

Before trial, Respondent submitted several *voir dire* questions for the trial court to propound to the potential jurors, including proposed *voir dire* question number eighteen, which read as follows:

> 18. There are certain legal principles governing a criminal case by which you <u>must abide</u> once you have taken your oath as a juror. If you have any difficulty in understanding these principles, or in accepting these principles, you must inform the Court at this time. It is imperative that you be absolutely honest and open about your feelings.
>
> a. **<u>Presumption of Innocence</u>**
> One of the fundamental principles of our legal system is that when a person is brought to Court charged with a crime, he must be presumed to be innocent unless, and until, the prosecution presents evidence that convinces you beyond a reasonable doubt that he is guilty. If you are selected as a juror in this case, will you have difficult[y] in accepting and/or applying the rule of law the defendant must be presumed to be innocent?
>
> b. **<u>Burden of Proof</u>**
> The prosecution has the burden of proving that the defendant is guilty beyond a reasonable doubt. This burden never shifts to the defense. The Defendant never has to prove that he is innocent. A defendant is not required to present any evidence. If the prosecution does not prove every element of an offense beyond a reasonable doubt, the jury must find the Defendant not guilty of that offense. Will you have any difficulty accepting and/or applying this legal principle?

---

[1] Testimony at trial revealed that the victim initially believed that Respondent had shot him, but later clarified that he had been pistol-whipped during the robbery.

2

c. **<u>Right to Remain Silent</u>**
In every criminal case, the Defendant has an absolute Constitutional right not to testify.
i) Does any member of the jury panel believe that a Defendant who does not testify is more likely to be guilty?
ii) If the Defendant presented no evidence at all in his defense, would this affect your ability to presume him innocent?

d. **<u>Beyond a Reasonable Doubt</u>**
One of the fundamental principles of our system is that the prosecution has the burden of proving that the Defendant is guilty beyond a reasonable doubt. Will you have any difficulty accepting and/or applying this legal principle?

During a bench conference regarding Respondent's proposed *voir dire* question, the following colloquy ensued:

> THE COURT: [] All of these questions about the law, [] I don't believe they are appropriate under Maryland law.
>
> [DEFENSE COUNSEL]: That's fine, over my objection, I understand.
>
> THE COURT: Sure. That will be just so counsel knows, that is question 18, [] which has recitations of presumption of innocence, burden of proof, right to remain silent, beyond a reasonable doubt. I've done some research actually beforehand on this, and . . . those are really questions of law that aren't necessary or required under Maryland [law].

*Voir dire* resumed, and, at the conclusion of jury selection, the trial court asked whether there were any objections to the jury panel:

> THE COURT: Okay. All right first, we have 12 persons seated in the jury box. Madam State, do you have any objection from the panel that's been seated?
>
> [THE STATE]: The State is satisfied.
>
> THE COURT: Okay and Defense I know that you've used your peremptory challenges, do you have any objection to the panel as seated?
>
> [DEFENSE COUNSEL]: No. Thank you your Honor.

Alternate jurors were then seated and the trial court again asked whether there were any objections to the jury panel as seated:

> THE COURT: [] All right at this time, [] is there any objection to the panel?
>
> [DEFENSE COUNSEL]: No.

At the conclusion of trial, the jury convicted Respondent of armed robbery, robbery, first and second degree assault, and theft of less than one thousand dollars and acquitted him of reckless endangerment, carrying a handgun, and the use of a firearm in the commission of a crime of violence. Respondent was sentenced to a total of twenty years' incarceration for armed robbery, without any probationary period, to run consecutively with a sentence received by Respondent for other convictions unrelated to the underlying incident. His remaining convictions were merged for purposes of sentencing.

**Court of Special Appeals' Opinion**

Respondent appealed his convictions to the Court of Special Appeals, arguing that based on this Court's decision in *Kazadi*, 467 Md. at 1, 223 A.3d at 554, the trial court abused its discretion in declining to ask proposed question number eighteen. Respondent argued that in *Kazadi*, this Court held that "on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify." *Id.* at 9, 223 A.3d at 559. To act in a contrary fashion would be an error in both *Kazadi* "and any other cases that are pending on direct appeal when this opinion is filed, where the relevant question has been preserved for appellate review." *Id.* at 54, 223 A.3d at 586. The State countered that Respondent had

4

not preserved the issue, since he waived his objection by accepting the jury without qualification at the conclusion of the *voir dire* process.

The Court of Special Appeals rejected the State's argument. Maryland Rule 4-323(c) requires a party to "make[] known" its objection to the court. The Court held that objecting to the omission of a *voir dire* question was sufficient to preserve the issue for appeal, and that "accepting the jury that is ultimately selected" after a defense objection "does not constitute acquiescence to the previous adverse ruling." *Ablonczy v. State*, No. 3219, Sept. Term., 2018, 2020 WL 3401190, at *4 (Md. Ct. Spec. App. June 19, 2020) (citing *Marquardt v. State*, 164 Md. App. 95, 143, 882 A.2d 900, 928 (2005); *State v. Stringfellow*, 425 Md. 461, 470–71, 42 A.3d 27, 32–33 (2012)).

The Court of Special Appeals also held that, pursuant to *Kazadi*, the trial court abused its discretion in not asking question eighteen, reversed the trial court's decision, and remanded for a new trial. *Ablonczy*, No. 3219, Sept. Term, 2018, 2020 WL 3401190, at *2–3. The State appealed to this Court, which granted *certiorari* to determine whether accepting a jury as ultimately empaneled waives any prior objection to the trial court's refusal to propound *voir dire* questions. *State v. Ablonczy*, 471 Md. 102, 240 A.3d 853 (2020).

### DISCUSSION

The Sixth Amendment of the United States Constitution and Article 21 of the Maryland Declaration of Rights both guarantee a criminal defendant the right to "an impartial jury." U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district

5

wherein the crime shall have been committed[.]"); Md. Const. Decl. of Rts. art. 21 ("That in all criminal prosecutions, every man hath a right to . . . a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."). As this Court explained in *Waters v. State*, 51 Md. 430, 436 (1879):

> It is a fundamental principle underlying the trial by jury, that each juror shall so far as it is possible be entirely *impartial* and *unbiased,* in order that he may hear the evidence, and decide the matter in controversy uninfluenced by any extraneous considerations whatever. We say, so far as it is possible, for after all, it may not be practicable even by the most rigid rules of exclusion to secure that impartiality which the law in the abstract contemplates.
>
> Every day's experience teaches that all human institutions are affected to some extent at least, by the common infirmities of those by whom they are framed, or by whom they are administered. To secure, however, a fair and impartial trial so far as it may be practicable, the law has from the earliest times prescribed certain qualifications for jurors; and has carefully excluded from the panel all persons who from partiality or prejudice, arising either from their relations to the parties or from a fixed opinion in regard to the matter in issue, cannot be expected to give an impartial consideration to the questions submitted to them.

The "extent of the examination [of potential jurors] rests in the sound discretion of the court[.]" *Langley v. State*, 281 Md. 337, 341, 378 A.2d 1338, 1340 (1977) (citations omitted); *Casey v. Roman Cath. Archbishop of Balt.*, 217 Md. 595, 605, 143 A.2d 627, 631 (1958) ("In this State it is well settled that the scope of the questions propounded to jurors on their *voir dire* is largely in the discretion of the trial court. Of course, the only purpose of the inquiry is to ascertain the existence of cause for disqualification. . . . [I]t is also well settled that parties to an action triable before a jury have a *right* to have questions propounded to prospective jurors on their *voir dire*, which are directed to a specific cause

6

for disqualification, and failure to allow such questions is an abuse of discretion constituting reversible error.").

"[*Voir dire*], the process by which prospective jurors are examined to determine whether cause for disqualification exists, is the mechanism whereby the right to a fair and impartial jury . . . is given substance." *Dingle v. State*, 361 Md. 1, 9, 759 A.2d 819, 823 (2000) (citations omitted). "The process entails examination of prospective jurors through questions propounded by the judge (or either of the parties, if allowed by the judge) to determine the existence of bias or prejudice and, literally translated, means 'to say the truth.'" *Charles v. State*, 414 Md. 726, 733, 997 A.2d 154, 159 (2010).

It is axiomatic that the "primary purpose of [*voir dire*] is to ensure a fair and impartial jury." *Id.*, 997 A.2d at 158; *Dingle*, 361 Md. at 9, 759 A.2d at 823 (citations omitted) ("The overarching purpose of [*voir dire*] in a criminal case is to ensure a fair and impartial jury."). To "ensure [that] a fair and impartial jury" is ultimately seated, a party may question the impartialness of the jury panel by way of objection during the *voir dire* process. *Id.*, 759 A.2d at 823. As such, objections during the *voir dire* process are an integral part of the "mechanism" of seating an "impartial jury." *Id.*, 759 A.2d at 823.

This is even more so when the objection revolves around fundamental principles of law such as the presumption of innocence, the right to remain silent, and the burden of proof, that this Court in *Kazadi* held must be asked by request of the defense. 467 Md. at 54, 223 A.3d at 586. In *Kazadi*, this Court held that "on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's

7

burden of proof, and the defendant's right not to testify." *Id.* at 9, 223 A.3d at 559. Prior to *Kazadi*, this Court held that "[*voir dire*] is not the appropriate time for the trial court to instruct the jury on the law that is applicable to the case." *Id.* at 26, 223 A.3d at 569 (citing *Twining v. State*, 234 Md. 97, 100, 198 A.2d 291, 293 (1964); *State v. Logan*, 394 Md. 378, 399–400, 906 A.2d 374, 387 (2006)). The rationale behind the majority opinion[2] in *Kazadi* was that "[*v*]*oir dire* questions concerning these fundamental rights are warranted because responses indicating an inability or unwillingness to follow jury instructions give rise to grounds for disqualification—*i.e.*, a basis for meritorious motions to strike for cause the responding prospective jurors[.]" 467 Md. at 41–42, 223 A.3d at 578. This Court applied its decision in *Kazadi* to "this case and any other cases that are pending on direct appeal when this opinion is filed, where the relevant question has been preserved for appellate review." *Id.* at 54, 223 A.3d at 586. The *Kazadi* decision did not address how to determine whether "the relevant question has been preserved for appellate review." *Id.*, 223 A.3d at 586.

Maryland Rule 4-323(c) delineates the method of objecting to the adverse ruling of a trial court on a proposed *voir dire* question:

> **Objections to Other Rulings or Orders.** For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

---

[2] Judges McDonald and Getty filed separate dissents both of which Judge Hotten joined.

In this case, the record reflects that Respondent objected to the decision by the trial court not to pose question eighteen in accordance with Md. Rule 4-323(c). The State argues, however, that Respondent waived that objection by accepting the jury as ultimately empaneled. We disagree, as we shall explain below.[3]

The most recent examination of waiver pertaining to *voir dire* questions was addressed by this Court in *State v. Stringfellow*, 425 Md. 461, 42 A.3d 27 (2012).[4] In

---

[3] The State also argues, under the doctrine of *stare decisis*, that our decision in *Kazadi must* be accompanied by development of the law with regard to preservation and waiver. *Stare decisis* requires a court to generally "follow earlier judicial decisions when the same points arise again in litigation." *Kazadi*, 467 Md. at 27, 223 A.3d at 570 (citing Black's Law Dictionary (11th ed. 2019)). There are two exceptions to *stare decisis*:

> [First,] an appellate court may overrule a case that either was clearly wrong and contrary to established principles, or has been superseded by significant changes in the law or the facts. The second exception to *stare decisis* applies where changed conditions or increased knowledge have rendered the appellate court's precedent unsound in the circumstances of modern life, a vestige of the past, and no longer suitable to the people.

*Id.* at 27–28, 223 A.3d at 570 (citations and markings omitted). Neither of these exceptions apply here. "This Court is not in the habit of overruling cases without stating that it intends to do so, and it is hardly conceivable that it would, without mentioning the fact, overrule so recent and important a case." *Moore v. State*, 412 Md. 635, 657, 989 A.2d 1150, 1162 (2010). In *Kazadi*, as noted above, we held that "on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify." 467 Md. at 9, 223 A.3d at 559. Not propounding the relevant *voir dire* question was an error in both *Kazadi* "and any other cases that are pending on direct appeal when this opinion is filed, where the relevant question has been preserved for appellate review." *Id.* at 47, 223 A.3d at 581. *Kazadi* did not address preservation, and did not create a "significant change[] in the law" regarding waiver of an objection made during *voir dire*. *Id.* at 28, 223 A.3d at 570.

[4] This Court, and the Court of Special Appeals, have a long history of decisions

(continued . . . )

*Stringfellow*, Baltimore City police officers observed Stringfellow holding a handgun and drove towards him. 425 Md. at 465, 42 A.3d at 29. Stringfellow attempted to run away, but was caught, arrested, and charged with possessing a firearm after being convicted of a disqualifying crime and wearing, carrying, or transporting a handgun. *Id.*, 42 A.3d at 29. At the beginning of trial, the State proposed a *voir dire* question (question number 14) "which inquired whether any member of the venire believed that the State must use certain scientific evidence and/or scientific investigative techniques before a potential juror could find the defendant guilty beyond a reasonable doubt." *Id.* at 465–66, 42 A.3d at 30. The following exchange then occurred:

> PROSECUTOR**:** Then my Question 14.
>
> [THE] COURT**:** Yeah. You always ask me for that and I always tell you no, then I always give it to you. So I'll probably do the same thing this time. I'll give it to you in [*voir dire*]. I won't give it to you in jury instructions.
>
> DEFENSE COUNSEL**:** I would object to it being asked in [*voir dire*].
>
> [THE] COURT**:** Of course you would. I understand, but it's a fair question to ask.

***

(. . . continued)
regarding objections made during *voir dire* and waiver. *See, e.g.*, *Neusbaum v. State*, 156 Md. 149, 143 A. 872, 874 (1928); *Glover v. State*, 273 Md. 448, 449, 330 A.2d 201, 202 (1975); *Couser v. State*, 282 Md. 125, 383 A.2d 389 (1978); *Calhoun v. State*, 297 Md. 563, 579, 468 A.2d 45, 52 (1983); *White v. State*, 300 Md. 719, 729, 481 A.2d 201, 205–06 (1984); *Thomas v. State*, 301 Md. 294, 483 A.2d 6 (1984); *Foster v. State*, 304 Md. 439, 499 A.2d 1236 (1985); *Mills v. State*, 310 Md. 33, 39–40, 527 A.2d 3, 6 (1987); *Gilchrist v. State*, 340 Md. 606, 616, 667 A.2d 876, 880 (1995); *Fowlkes v. State*, 117 Md. App. 573, 579, 701 A.2d 862, 865 (1997); *Marquardt v. State*, 164 Md. App. 95, 142–43, 882 A.2d 900, 928 (2005); *McFadden v. State*, 197 Md. App. 238, 250–51, 13 A.3d 68, 75–76 (2011).

> [THE] COURT**:** We'll take it—here's what we're going to do. I'll give the instruction over the objection of the defense and we'll see where we go with it because it may not become relevant at all.

*Id.* at 466, 42 A.3d at 30. The trial court propounded the State's question and *voir dire* resumed. At the conclusion of *voir dire*, the clerk asked the parties whether the jury was acceptable, and defense counsel replied "Yes, it is." *Id.* at 467, 42 A.3d at 30. Stringfellow was convicted on both counts, and the case reached this Court on the issue of whether Stringfellow had waived his objection to question number fourteen by accepting the jury as empaneled without qualification. *Id.* at 468–69, 42 A.3d at 31.

We held that Stringfellow had waived his objection by accepting the jury as empaneled without qualification, and that even if he had preserved his objection, it was harmless error, given the trial record. *Id.* at 469, 42 A.3d at 32. Writing for the majority of this Court, Judge Glenn T. Harrell, Jr., relying on *Gilchrist,* 340 Md. at 617, 667 A.2d at 881, differentiated objections during *voir dire* into two categories. The first group of objections goes "to the inclusion or exclusion of a prospective juror (or jurors) or the entire venire[.]" *Stringfellow*, 425 Md. at 469, 42 A.3d at 32 (citing *Gilchrist*, 340 Md. at 617, 667 A.2d at 881). In that case, unqualified acceptance of the jury panel waives any prior objections. *Id.*, 42 A.3d at 32. The second group of objections, on the other hand, which are "incidental to the inclusion [or] exclusion of a prospective juror or the venire[, are] not waived by accepting a jury panel at the conclusion of the jury-selection process[.]" *Id.* at 469, 42 A.3d at 32 (citing *Gilchrist,* 340 Md. at 618, 667 A.2d at 882). This Court explained that:

11

Generally, a party waives his or her [*voir dire*] objection going to the inclusion or exclusion of a prospective juror (or jurors) or the entire venire if the objecting party accepts unqualifiedly the jury panel (thus seated) as satisfactory at the conclusion of the jury-selection process. Conversely, a [*voir dire*] objection that is incidental to the inclusion/exclusion of a prospective juror or the venire is not waived by accepting a jury panel at the conclusion of the jury-selection process; rather, such an objection is preserved for review on direct appeal.

*Objections related to the inclusion/exclusion of prospective jurors are treated differently for preservation purposes because accepting the empaneled jury, without qualification or reservation, is directly inconsistent with the earlier complaint about the jury, which the party is clearly waiving or abandoning.* Objections related indirectly to the inclusion/exclusion of prospective jurors are not deemed likewise inconsistent and are deemed preserved for appellate review. Although the difference between the two categories of objections may appear slight, it is important in light of the waiver implications.

*Stringfellow*, 425 Md. at 469–70, 42 A.3d at 32 (citing *Gilchrist,* 340 Md. at 617–18, 667 A.2d at 881–82) (other citations and markings omitted) (emphasis added). To illustrate the distinction between objections that were directly or only incidentally aimed at the inclusion or exclusion of prospective jurors, the following examples were listed:

We have concluded that the following types of [*voir dire*] objections were *aimed directly at the inclusion/exclusion of a prospective juror or the venire and were waived* when the objecting party accepted the jury without contemporaneous renewal of his or her complaint: (1) an objection to a judge's refusal to strike prospective jurors for cause, *Mills,* 310 Md. at 39–40, 527 A.2d at 6; (2) an objection to the exclusion of a juror because of his beliefs about capital punishment, *Foster v. State,* 304 Md. 439, 450–51, 499 A.2d 1236, 1241–42 (1985); (3) a defendant who failed to object to unacceptable venire members after using all of his peremptory strikes, *White v. State,* 300 Md. 719, 729–30, 481 A.2d 201, 205–06 (1984); (4) an objection to a venire not selected randomly from registered-voter lists, *Glover v. State,* 273 Md. 448, 451–52, 330 A.2d 201, 203–04 (1975); and, (5) an objection to prejudicial remarks made by the prosecutor in earshot of the venire, *Neusbaum v. State,* 156 Md. 149, 162–63, 143 A. 872, 878 (1928).

On the other hand, *the following objections were deemed incidental to the inclusion/exclusion of prospective jurors and, therefore, not waived by the objecting party's unqualified acceptance thereafter of the jury panel*: (1) an objection to a prior jury panel, where the judge excused that prior jury panel and called a second one from which was selected the jury that convicted the defendant, *Gilchrist,* 340 Md. at 617–18, 667 A.2d at 881–82; (2) an objection, made during [*voir dire*], to being refused permission to inspect a prosecutor's notes on prospective jury members, *Couser,* 282 Md. at 129, 383 A.2d at 391–92; and, (3) *an objection to a judge refusing to ask a proposed voir dire question*, *Marquardt v. State,* 164 Md. App. 95, 142–43, 882 A.2d 900, 927–28 (2005).

*Stringfellow*, 425 Md. at 470–71, 42 A.3d at 32–33 (emphasis added).

As applied to Stringfellow's objection, this Court determined that:

Stringfellow's objection—that the State's [*voir dire*] question, if asked, would bias the venire members against him and diminish the State's burden of proof—tracks most closely in purpose and design the objections in *Glover* and *Neusbaum*. *Stringfellow's objection implied necessarily that the venire members would be incapable of sitting on the jury and evaluating the evidence (or lack of certain evidence) fairly and objectively because the pertinent voir dire question 'poisoned' the venire by implying, among other things, that Stringfellow was guilty. . . .*

Like the objections in *Neusbaum* and *Glover*, Stringfellow's objection asserted that the venire members, if the relevant question was posed, would be unfit to sit as jurors in his trial; therefore, his objection went to the inclusion of prospective jurors on the jury selected ultimately. Objections of this nature are waived if not preserved appropriately at the time the trial court empanels the jury. Here, Stringfellow accepted, without reservation or qualification, the jury. Consequently, Stringfellow failed to preserve his [*voir dire*] objection for future consideration on appeal.

*Id.* at 471, 42 A.3d at 33 (emphasis added).

In reaching our decision, we discussed the differences between objections addressing "the inclusion or exclusion of a prospective juror (or jurors) or the entire venire" and objections that are "incidental to the inclusion [or] exclusion of a prospective juror or the venire[.]" *Id.* at 469, 42 A.3d at 32. We noted that objections that are directly related

13

to a prospective juror or jurors are waived by later acceptance of the jury panel without qualification. *Id.*, 42 A.3d at 32. Objections that are incidental, are not. *Id.*, 42 A.3d at 32. Objections directly related to a prospective juror or jurors are waived, if not preserved, because the "objection implied necessarily that the venire members would be incapable of sitting on the jury and evaluating the evidence (or lack of certain evidence) fairly and objectively because the pertinent [*voir dire*] question 'poisoned' the venire by implying [guilt]." *Id.* at 471, 42 A.3d at 33. Failure to preserve a direct objection, therefore, must constitute a waiver because the jury has been "poisoned" in some way and the objecting party has now accepted the jury as is. *Id.*, 42 A.3d at 33. Objections that are incidental, however, do not "poison" the jury the same way and no waiver can be inferred from the later acceptance of the empaneled jury. *Id.*, 42 A.3d at 33. We did not anticipate objecting counsel to raise a prior objection again at the conclusion of *voir dire* when none of the jurors selected were subject to a prior objection. *Id.* at 472–73, 42 A.3d at 33–34.

Put another way, "an objection to a *propounded*, purportedly prejudicial, [*voir dire*] question relates directly to the composition of the jury[]" because a "prejudicial [*voir dire*] question, *when propounded*, may inject the very prejudice that [*voir dire*] attempts to filter out." *Id.* at 472, 42 A.3d at 34 (emphasis added). By contrast, an "*unpropounded* [*voir dire*] question, like a defused bomb, cannot likewise prejudice the venire." *Id.* at 472–73, 42 A.3d at 34 (emphasis added). Thus, there is a critical difference between objections to *voir dire* questions proffered by opposing counsel (or the circuit court *sua sponte*) that the circuit court ultimately asks the jury—which are categorized as "direct" and waived—and objections based on the trial court's decision *not* to ask a party's own proffered *voir dire*

14

questions—which are categorized as "indirect" and not waived. Counsel need not raise a prior objection when there is no one in the jury box that the objecting party specifically objected to. Rather, it is enough to simply note the exception in accordance with Md. Rule 4-323.

Based on *Stringfellow*, we conclude in the case at bar that defense counsel's objection was not waived by later acceptance of the jury, without qualification. Respondent proffered *voir dire* question number eighteen, which the trial court declined to propound to the venire during jury selection. Respondent objected to the denial by the trial court to his request to ask proposed *voir dire* question number eighteen in accordance to Md. Rule 4-323(c) by "mak[ing] known to the court [his] objection to the action of the court." Proposed *voir dire* question number eighteen was never propounded to the venire, and Respondent accepted the jury without qualification. Applying the principles articulated in *Stringfellow*, we hold that the objection to the denial of the request to ask the voir dire question was not waived by the later unqualified acceptance of the jury as empaneled. Thus, the Court of Special Appeals correctly concluded that Respondent had not waived his objection to the trial court's determination not to ask proposed *voir dire* question number eighteen.

## CONCLUSION

As this Court set forth in *Stringfellow*, objections that relate to the determination of a trial court to not ask a proffered *voir dire* question are not waived by later acceptance, without qualification, of the jury as empaneled. Respondent noted an objection to the decision of the trial court not to ask proffered *voir dire* question number eighteen. For the

reasons expressed previously, Respondent did not waive that objection by accepting the

jury as empaneled without repeating his prior objection.  Accordingly, we shall affirm the

decision of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 28

September Term, 2020

_____

STATE OF MARYLAND

v.

ANTHONY GEORGE ABLONCZY

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Concurring Opinion by McDonald, J.,
which Barbera, C.J., joins.

_____

Filed: June 23, 2021

For the reasons set forth in my dissent in *Kazadi v. State*, I believe that decision was a mistake – not so much because the decision required a trial court to ask certain *voir dire* questions, but because of how it did so.[1]  We must now grapple with the ramifications of making a change in jury selection procedure by a partially retroactive decision rather than a prospective rule.  The abrogation of the prior law concerning mandatory *voir dire* questions and the retroactive adoption of new policy[2] is exacerbated by the Court's case law on when acceptance of a jury by a litigant waives prior objections to the jury selection process – case law that has made sometimes subtle and inscrutable distinctions.

Judge Hotten's majority opinion in this case lists those many decisions,[3] but appropriately focuses on the most recent one – *Stringfellow*[4]– which articulated different standards for preserving objections to asked and unasked *voir dire* questions.  Her application of the *Stringfellow* dichotomy to this case is straightforward.  In my view, the *Stringfellow* decision was a thoughtful attempt to make sense of the prior decisions of this Court and the Court of Special Appeals about the preservation of objections to the jury selection process.  The more fundamental question, however, is why in any instance we

---

[1] 467 Md. at 55-57 (McDonald, J., dissenting in part).

[2] The new policy is not compelled by constitution or statute.  As the Court acknowledged in the *Kazadi* opinion, only a few jurisdictions have adopted the same rule. 467 Md. at 28-35.

[3] *See* Majority slip op. at 9-10 & n.4.

[4] 425 Md. 461 (2012).

require a party to express an objection to the jury selection process a second time after that objection has been fully articulated once. Our rules do not require it.[5] Case law does.

So perhaps it is time to jettison that case law. Otherwise, we end up in the ironic place where an objection to a *voir dire* question actually used in selecting the jury must be made twice, while an objection to an unasked question that only theoretically had an effect on the selection of the jury need be made only once. Finding an objection to be preserved does not mean the objection has any merit; it simply means that an appellate court must consider the substance of the objection.

Finally, I note the standard of review that is applied in these cases and what it means. As the *Kazadi* decision correctly stated, a trial judge's decision whether to ask a particular *voir dire* question is reviewed under an "abuse of discretion" standard. 467 Md. at 24. In accordance with the direction in the *Kazadi* decision, the Court of Special Appeals in this case held that the trial court abused its discretion in declining to ask the requested *voir dire* questions. 2020 WL 3401190 at *1, 3 (2020). It should be emphasized that, in expressing that holding in this context, an appellate court does not fault the trial court for applying the law as it existed at the time of the trial. The phrase "abuse of discretion" often connotes a trial court's failure in some way to do that which the law required it to do. But it is appropriate to note that, in this case, the trial court *did* act in accordance with the law at the

---

[5] *See* Maryland Rule 4-323(c) ("…it is sufficient that a party, at the time the ruling … is made or sought, makes known to the court the action that the party desires the court to take …").

time it acted, and that the reversal in this case and others[6] on *Kazadi* grounds is attributable to a retroactive change in the law made by this Court.

Chief Judge Barbera advises that she joins this opinion.

---

[6] Based on information submitted by the parties in this case and in pending petitions for a writ of *certiorari*, it appears that the results of at least a dozen (and counting) trials may be reversed for a similar "abuse of discretion." In these cases there does not appear to be any contention that the jury that returned the verdict was other than fair and impartial.

Circuit Court for Washington County
Case No. C-21-CR-18-000119
Argued: January 4, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 28

September Term, 2020

_____

STATE OF MARYLAND

v.

ANTHONY GEORGE ABLONCZY

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: June 23, 2021

Respectfully, I concur.  I join the majority opinion and agree that the judgment of the Court of Special Appeals should be affirmed.  That said, in addition to affirming the Court of Special Appeals, I would hold that going forward accepting a jury as ultimately empaneled waives any prior objection to a trial court's refusal to propound *voir dire* questions of the type that fall under this Court's holding in <u>Kazadi v. State</u>, 467 Md. 1, 223 A.3d 554 (2020), *i.e*., I would conclude that the holding applies prospectively.  In light of our holding in <u>Kazadi</u>, it would be difficult to continue to conclude that *voir dire* questions of the type discussed in <u>Kazadi</u> and at issue in this case are not critical to the composition of the jury and to determine that, simply because the objection is to an unasked question, no renewed objection at the time the jury is empaneled is required to avoid waiver of the issue.  I would conclude that an objection is required to be made or renewed at the time the jury is empaneled to preserve an issue as to the trial court's refusal to propound <u>Kazadi</u>-type *voir dire* questions, but the rule should not be applied to the detriment of defendants whose cases are now pending on direct appeal.

In <u>State v. Stringfellow</u>, 425 Md. 461, 465, 42 A.3d 27, 29 (2012), this Court held that a defendant waived any issue as to the asking of an "anti-CSI effect" *voir dire* question, requested by the State, "when he accepted (after his objection was overruled and the question propounded) the jury, without qualification[.]"  We concluded that the defendant's objection went to the composition of the jury and that case law made clear "that an overruled objection to a voir dire question, where the nature of the objection was directed to the composition of the jury, is waived when the objecting party accepts thereafter the jury, without qualification."  <u>Id.</u> at 465, 42 A.3d at 29.  In determining that the defendant

had waived his objection by accepting the jury as empaneled without qualification, this Court discussed waiver generally, stating:

> Generally, a party waives his or her voir dire objection going to the inclusion or exclusion of a prospective juror (or jurors) or the entire venire if the objecting party accepts unqualifiedly the jury panel (thus seated) as satisfactory at the conclusion of the jury-selection process. Conversely, a voir dire objection that is incidental to the inclusion/exclusion of a prospective juror or the venire is not waived by accepting a jury panel at the conclusion of the jury-selection process; rather, such an objection is preserved for review on direct appeal.
> Objections related to the inclusion/exclusion of prospective jurors are treated differently for preservation purposes because accepting the empaneled jury, without qualification or reservation, is directly inconsistent with the earlier complaint about the jury, which the party is clearly waiving or abandoning. Objections related indirectly to the inclusion/exclusion of prospective jurors are not deemed likewise inconsistent and are deemed preserved for appellate review.

Id. at 469, 42 A.3d at 32 (cleaned up).

We explained that certain types of *voir dire* objections were directly aimed at the inclusion or exclusion of a prospective juror or the venire and, consequently, that the objections were waived when the objecting party accepted the jury without renewing an objection to those types of questions. See id. at 470, 42 A.3d at 32. Those types of objections included an objection to a trial court's refusal to strike prospective jurors for cause and an objection to the exclusion of a juror because of the juror's beliefs about capital punishment. See id. at 470, 42 A.3d at 32. By contrast, this Court explained that other types of *voir dire* objections were incidental to the inclusion or exclusion of a prospective juror and therefore not waived where the objecting party accepted the jury panel without qualification. See id. at 470-71, 42 A.3d at 32-33. Those types of objections included "an objection, made during voir dire, to being refused permission to inspect a prosecutor's

- 2 -

notes on prospective jury members" and "an objection to a judge refusing to ask a proposed voir dire question[.]" Id. at 471, 42 A.3d at 33 (citations omitted).

In Stringfellow, id. at 471, 42 A.3d at 33, we explained that the defendant's objection to the State's "anti-CSI effect" *voir dire* question was that, if asked, the question would bias prospective jurors against him, render the prospective jurors unfit to sit as jurors at trial, and diminish the State's burden of proof, which demonstrated that the "objection went to the inclusion of prospective jurors on the jury selected ultimately." We reaffirmed that failing to object, *i.e.*, accepting a jury as empaneled, where a trial court asks or propounds a *voir dire* question that a party objects to, results in waiver, but that failing to object, *i.e.*, accepting a jury as empaneled, where a trial court declines or refuses to ask a *voir dire* question (the question is not propounded), does not constitute waiver.

In Stringfellow, in reaffirming such a rule, we relied on several key cases—Gilchrist v. State, 340 Md. 606, 667 A.2d 876 (1995), Fowlkes v. State, 117 Md. App. 573, 701 A.2d 862 (1997), and Marquardt v. State, 164 Md. App. 95, 882 A.2d 900 (2005). In Gilchrist, 340 Md. at 618, 667 A.2d at 882, where there had been two jury panels, this Court concluded that defense counsel's acceptance of a second jury panel related only to the second jury panel and had no bearing as to whether the trial court erred in dismissing the first jury panel. On appeal, the State contended that the defendant had waived any objection to the dismissal of the first jury panel when defense counsel unequivocally accepted the jury chosen from the second panel. See id. at 617, 667 A.2d at 881. This Court disagreed, explaining:

> This Court in a series of cases has taken the position that a defendant's

claim of error in the inclusion or exclusion of a prospective juror or jurors is ordinarily abandoned when the defendant or his [or her] counsel indicates satisfaction with the jury at the conclusion of the jury selection process.

Th[is] principle . . . , however, relates to a complaint about the exclusion of a prospective juror from, or the inclusion of a prospective juror in, the jury which tried the defendant. None of the[] cases involved the situation where there were two separate jury pools, where the complaint related to the tentative jury panel drawn from the first pool, and where the jury which heard the case was drawn from the second pool.

When a party complains about the exclusion of someone from or the inclusion of someone in a particular jury, and thereafter states without qualification that the same jury as ultimately chosen is satisfactory or acceptable, the party is clearly waiving or abandoning the earlier complaint about that jury. The party's final position is directly inconsistent with his or her earlier complaint.

Nevertheless, where the objection was not directly aimed at the composition of the jury ultimately selected, we have taken the position that the objecting party's approval of the jury as ultimately selected did not explicitly or implicitly waive his previously asserted objection, and his objection was preserved for appellate review.

Id. at 617-18, 667 A.2d at 881-82 (cleaned up).

Relying on Gilchrist, id. at 617-18, 667 A.2d at 881-82, in Fowlkes, 117 Md. App. at 580, 701 A.2d at 866, the Court of Special Appeals held that defense counsel did not waive an objection to the trial court's failure to ask a particular *voir dire* question by accepting the jury as empaneled, stating: "Here, defense counsel objected to the trial court's failure to ask a particular question during voir dire, not to the ultimate composition of the jury. Therefore, defense counsel did not waive the objection by approving the panel selected." The Court of Special Appeals explained that, under the circumstances, "defense counsel's acceptance of the jury was merely obedient to the court's ruling and obviously was not a withdrawal of the prior objection, timely made" and that, "because the objection was not directly aimed at the composition of the jury, . . . a statement of satisfaction with

- 4 -

the panel selected did not waive collateral issues." Fowlkes, 117 Md. App. at 580, 701 A.2d at 866 (cleaned up).

In Marquardt, 164 Md. App. at 142-43, 882 A.2d at 927-28, the Court of Special Appeals concluded that a defendant's objection to a trial court refusing to ask proposed *voir dire* questions was sufficient to preserve the issue for appellate review and that "accepting the jury that [was] ultimately selected after the [trial] court [] refused to propound requested *voir dire* questions d[id] not constitute acquiescence to the previous adverse ruling." (Citations omitted). The requested *voir dire* questions included, among other things, asking the jury panel whether it understood that the State had the burden of proof and asking whether any member of the panel thought that the defendant should be required to prove his innocence. See id. at 141, 882 A.2d at 927. The defendant had argued to no avail that this Court's opinion in Twining v. State, 234 Md. 97, 198 A.2d 291 (1964), which was good law at the time, was outdated and should not be followed. See Marquardt, 164 Md. App. at 142, 882 A.2d at 928.

Significantly, last year, in Kazadi, 467 Md. at 9, 223 A.3d at 559, this Court held "that, on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify." In so holding, this Court relied on key developments in the law—namely, the holdings in Stevenson v. State, 289 Md. 167, 179-80, 423 A.2d 558, 565 (1980), and Montgomery v. State, 292 Md. 84, 91, 437 A.2d 654, 658 (1981), "that, other than with respect to the crime charged, jury instructions are binding[.]" Kazadi, 467 Md. at 8-9, 223

A.3d at 559. And, we recognized that, in Montgomery, 292 Md. at 91, 437 A.2d at 658, this Court observed that fundamental principles,

> such as the presumption of innocence, the burden of proof, and the right not to testify, are not the law of the crime; they are not advisory; and they cannot be the subject of debate by counsel before the jury. They are binding. They are the guidelines of due process to which every jury is required to adhere.

Kazadi, 467 Md. at 26, 223 A.3d at 569.

We expressly determined that this Court's holding as to *voir dire* questions in Twining, 234 Md. at 100, 198 A.2d at 293—"that a trial court need not ask during *voir dire* whether any prospective jurors would be unwilling to follow jury instructions on the presumption of innocence and the State's burden of proof"—was "based on outdated reasoning and has been superseded by significant changes in the law." Kazadi, 467 Md. at 9, 223 A.3d at 559. As such, this Court held:

> To the extent that this Court held in Twining that it is inappropriate to ask on *voir dire* questions concerning the presumption of innocence, the burden of proof, and a defendant's right to remain silent, we overrule the holding in Twining, and conclude that, on request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the fundamental principles of presumption of innocence, the State's burden of proof, and the defendant's right not to testify.

Kazadi, 467 Md. at 9, 223 A.3d at 559. We reiterated that, "[c]onsistent with Stevenson, 289 Md. at 180, 423 A.2d at 565, and Montgomery, 292 Md. at 91, 437 A.2d at 658, today, jury instructions about the law are binding and trial courts advise juries as much." Kazadi, 467 Md. at 44, 223 A.3d at 579. We explained that the "long-standing fundamental rights" concerning the presumption of innocence, the burden of proof, and a defendant's right not to testify are "critical to a fair jury trial in a criminal case[,]" and *voir dire* questions about

- 6 -

a juror's inability or unwillingness to honor those fundamental rights are "mandatory on request[.]" Id. at 46, 223 A.3d at 581. We concluded that, "[o]n request, during *voir dire*, a trial court must ask whether any prospective jurors are unwilling or unable to comply with the jury instructions on the presumption of innocence, the burden of proof, and the defendant's right not to testify." Id. at 48, 223 A.3d at 582. An issue of preservation was not raised in Kazadi.

All of that said, from my perspective, Stringfellow and the cases it cited illustrate that, generally where a party accepts the jury as empaneled without qualification, waiver of an objection to a propounded *voir dire* question will be found and yet generally waiver of an objection to an unpropounded *voir dire* question will not be found. The rationale behind this dichotomy appears to be that an objection to an unasked *voir dire* question is assumed to be incidental to the inclusion or exclusion of a prospective juror, *i.e.*, that an objection to an unasked *voir dire* question is not directly related to the composition of the jury. Stringfellow and the cases it cited limit waiver to objections directly aimed at the composition of the jury, because such objections are inconsistent with later accepting the jury as empaneled, and conclude that an objection to an unasked *voir dire* question does not relate to the composition of the jury, and therefore, accepting the jury is not inconsistent with the earlier objection and does not constitute waiver. Applying such a rule in every case, however, disregards the circumstance that an objection to an unasked *voir dire* question may directly relate to the composition of the jury, such that accepting the jury as empaneled should constitute waiver of that objection.

In my view, it is not possible to reconcile broad application of the rule reaffirmed

in <u>Stringfellow</u>—that a trial court's refusal to ask certain *voir dire* questions is not considered to be directly related to the composition of the jury, and therefore there is no need to renew an objection to the trial court's refusal at the time the jury is empaneled in order to preserve the issue—with our recent decision in <u>Kazadi</u>. To be faithful to the rationale underlying the rule discussed in <u>Stringfellow</u>, I would modify its application where <u>Kazadi</u>-type *voir dire* questions are concerned.[1] In <u>Kazadi</u>, 467 Md. at 48, 223 A.3d at 582, this Court made clear that not asking *voir dire* questions, on request, concerning fundamental principles is reversible error. Because *voir dire* questions concerning prospective jurors' willingness and ability to comply with jury instructions on the

---

[1]Our decision in <u>Kazadi</u> demonstrated that *voir dire* questions concerning the presumption of innocence, the State's burden of proof, and the defendant's right not to testify concern fundamental principles and are directly related to the composition of the jury. As such, from my perspective, application of the principle that the failure to ask *voir dire* questions such as these is incidental or does not relate to the composition of the jury is no longer warranted. As we explained in <u>Kazadi</u>, 467 Md. at 27-28, 223 A.3d at 570,

> [u]nder the doctrine of *stare decisis*—Latin for "to stand by things that are decided"—generally, a court must follow earlier judicial decisions when the same points arise again in litigation. That said, *stare decisis* is not absolute. Under two exceptions to *stare decisis*, an appellate court may overrule a case that either was clearly wrong and contrary to established principles, or has been superseded by significant changes in the law or the facts. The second exception to *stare decisis* applies where changed conditions or increased knowledge have rendered the appellate court's precedent unsound in the circumstances of modern life, a vestige of the past, and no longer suitable to the people.

(Cleaned up) (some italics added). Although this Court's holding in <u>Kazadi</u> did not change the law with respect to principles of waiver and preservation, as a result of <u>Kazadi</u>, it is clear that broad application of the principle that objections to the refusal to propound *voir dire* questions are not waived is no longer justifiable under the rationale set forth in <u>Stringfellow</u>.

presumption of innocence, the burden of proof, and the defendant's right not to testify are critical questions about fundamental principles that must be asked upon request, it is hard to discern how not asking those *voir dire* questions is somehow only incidental to the composition of the jury and that a renewed objection is not necessary at the time the jury is empaneled. This Court's holding in <u>Kazadi</u> demonstrates that *voir dire* questions concerning the fundamental principles at issue in the case are directly related to the composition of the jury, so much so that the questions must be asked on request and that the failure to do so is reversible error. The failure to ask such questions could result in the inclusion on the jury of jurors who are either unwilling or unable to follow the court's instructions as to fundamental principles concerning the presumption of innocence, the State's burden of proof, and a defendant's right not to testify.

Ultimately, in light of <u>Kazadi</u>, I would not blanketly adhere to the theory underlying the holding in <u>Stringfellow</u> to conclude that accepting a jury as empaneled does not waive a prior objection to a trial court's refusal to propound *voir dire* questions of the type requested in this case concerning the presumption of innocence and the State's burden of proof. To do so would give credence to the irreconcilable position that the *voir dire* questions at issue in this case and those that were at issue in <u>Kazadi</u> are of such fundamental importance that the failure to ask them constitutes reversible error, but, on the other hand, the failure to ask the questions is so incidental to the composition of the jury that an objection need not be renewed at the time the jury is empaneled. Rather, it is clear under <u>Kazadi</u> that *voir dire* questions concerning fundamental rights go to the heart of the composition of the jury and that an objection must be stated or renewed at the time the jury

- 9 -

is empaneled to preserve an issue as to the trial court's refusal to ask such questions. Accordingly, where a party accepts a jury as empaneled, without qualification or objection, that acceptance waives the party's prior objection to the trial court's refusal to propound <u>Kazadi</u>-type *voir dire* questions.

The question becomes whether modification of the application of <u>Stringfellow</u> to <u>Kazadi</u>-type *voir dire* questions should apply to this case and other cases now pending on appeal or whether the need to renew an objection to the failure to ask <u>Kazadi</u>-type *voir dire* questions at time of empanelment of the jury should apply prospectively. In my view, the requirement to renew the objection should apply prospectively. I would affirm the judgment of the Court of Special Appeals based on the framework set forth in <u>Stringfellow</u> as it existed at the time of Ablonczy's trial.

For the above reasons, respectfully, I concur.